## BOOKOUT v. ANDERSON.

The plaintiff in a petitory action must recover upon the strength of his own title.

Where a partnership has been dissolved and one of the partners has died, a surviving partner, engaged in liquidating its affairs, cannot release the right of recourse of the partnership, as accommodation acceptors, upon a third person, so as to render the latter competent as a witness.

Third persons, creditors of a purchaser holding under a title complete by the sale and delivery of the property, cannot be affected by secret equities between the vendor and purchaser.

APPEAL from the District Court of Madison, *Curry*, J.
*T. N. Pierce*, *Shannon* and *Stacy*, for the plaintiff and intervenors. *Henderson*, for the defendant. *Bemiss*, *Thomas* and *Snyder*, for the appellant, *Shelton*. The judgment of the court was pronounced by

SLIDELL, J. This is a petitory action to recover certain slaves of the defendant, who asserted ownership by purchase of the plaintiff in Mississippi. *Paxton* and others intervened in the suit, claiming the slaves under a deed of trust, executed by *Bookout* in Mississippi, for the security of *Tiernan, Cuddy & Co.* Pending the suit, *Shelton* and one *Robert Anderson*, joint mortgagees

of the defendant, purchased the slaves at judicial sale upon the foreclosure of their mortgage. They were made parties by the intervenors, who charged that the mortgage was fraudulent. The defendant, *Samuel Anderson*, having become bankrupt, the case was dismissed as to him, and was tried between the plaintiff, the intervenors and *Shelton*. There was judgment for the plaintiff, and *Shelton* now brings the case before us on appeal.

We shall first consider the claims of the intervenors. The deeds of trust under which they claim were executed between *Bookout* and *Harvy Houghton* of the first part, *H. & A. Paxton* of the second, and *Tiernan, Cuddy & Co.* of the third part. Their object and consideration were as follows: *Tiernan, Cuddy & Co.*, commission merchants at New Orleans, had given *Bookout & Houghton* a credit to draw from time to time on their house for a certain amount, and accordingly, on the 9th of February, 1836, certain bills were drawn by *Bookout*, in favor and endorsed by *Houghton*, upon *Tiernan, Cuddy & Co.*, who accepted them; these bills were payable in January, 1837. The first deed was executed in contemplation of the drawing of these bills. The second was executed on the day of their acceptance, and conveys certain lands in Mississippi and the slaves in question to the trustees, in trust to secure and save harmless the house of *Tiernan, Cuddy & Co.* from all damage and responsibility that may result by virtue of the acceptance, as also to ensure the prompt and punctual payment of the bills, at their respective maturities, to that firm, together with commissions, costs and charges. There is the usual proviso that the title thus conveyed and the trust created shall determine and be void, if the grantors shall pay the house the bills at their maturity, with all costs and charges; and that, in case of non-payment of any of the bills, the trustees may, at the request of *Tiernan, Cuddy & Co.*, sell such portions of the property as they may think proper on thirty days advertisement, and apply the proceeds to the payment of such of the bills as may become due and remain unpaid, and then, from time to time, sell the residue to meet the bills as they may fall due and remain unpaid.

These bills, as we have said, matured in 1837. Whether they were negotiated or not, whether they have been paid or not, in short what has become of them, has not been proved. *Tiernan, Cuddy & Co.* stopped payment in 1836; their affairs fell into such confusion as to make it improbable that they ever paid their acceptances; and the bills, at the time of the trial of this cause in 1845, if negotiated and outstanding in the hands of third persons, must, in the absence of evidence, be deemed to be prescribed. The intervenors have not even alleged in their petition that *Tiernan, Cuddy & Co.* had ever paid, or even been called upon to pay, the bills. Under such a state of pleadings and evidence we may well treat the claim of the intervenors as not existing, and dismiss it entirely from our consideration as though they, and the *cestuis qui trust*, whom they represent, had never had any connection with this controversy. *Anderson* has been dismissed from the cause, his assignee in bankruptcy has not been made a party, and the controversy is thus narrowed down to a consideration of the rights of *Shelton*.

Standing as plaintiff in a petitory action *Bookout* must recover upon the strength of his own title, and not upon the weakness of his adversary's.

Before proceeding to the main question it is proper to examine the bill of exceptions taken to the admission of the deposition of *Houghton*, a witness for the plaintiff and intervenors. This deposition, taken some years since under commission, had been admitted at a former trial, was excepted to on the ground

of interest, and on appeal the former Supreme Court sustained the exception. No attempt has been made to take the testimony of *Houghton* anew, nor has the impossibility of doing so been shown. The attempt however has been made, at the second trial, to cure the objection of interest, by showing that before his deposition was taken, *Tiernan*, one of the house of *Tiernan, Cuddy & Co.*, on the suggestion of the counsel of the plaintiff and intervenors that a release was indispensable to make him a competent witness, had addressed a letter to *Houghton* releasing him. The counsel is the witness who gives this new testimony. He states that he delivered the letter to *Houghton*, before his testimony was taken. It is clear that the release thus given was utterly ineffi cient in law. When it was given the firm had been dissolved; *Tiernan* was the mere liquidating partner, and one of the partners had died. *Tiernan* was without authority to discharge the right of recourse of his firm, as acceptors for the accommodation of *Houghton*, for such, as we have seen from the recital of the deed of trust, and the averments of the petition, was his real position, although only endorser on the accepted drafts. Moreover, *Houghton* is proved to have had an interest in the price of the slaves which were the subject of the agreement between *Anderson & Houghton*, and must be considered therefore as having an interest in their recovery. The testimony of this witness was therefore improperly received.

The plaintiffs claim is in the nature of a petitory action. He alleges himself to be the legal owner of the slaves, and contends that what passed between him and *Anderson* in the State of Mississippi, was a mere 'negotiation' for the sale of the slaves and a certain plantation on which they then were, and that, pending the negotiation, *Anderson* was allowed to have possession, it being understood that no title or right of property was to vest in *Anderson*, until after the performance of the condition precedent of payment, when plaintiff was to make him a deed for the land and slaves; and that there has been no performance on *Anderson's* part.

The testimony on this point is loose and vague; but, if it be considered as putting the original transaction on that footing, the subsequent conduct of the parties can hardly be considered otherwise than as an abandonment of the condition precedent, at least as against third persons. The agreement, or negotiation, as the plaintiff terms it, was for the lands and slaves at a total price of $65,000. *Bookout* subsequently executed absolute deeds for the lands which were recorded, and contained acknowledgments of cash payments of $50,000; the witnesses to these deeds proving now, however, that the money was not really paid at the time of their execution. Besides, there are in evidence various receipts dated in Mississippi and signed by *Bookout*, acknowledging considerable sums as received at sundry times "on account of the purchase of lands and negroes lying on Cold Lake," the site of the plantation. In a letter written by the plaintiff to the defendant, he speaks of the plantation as "your plantation·" The agreement for purchase took place in the spring of 1838; and, according to the plaintiff's own petition, payment was to have been made in the summer of 1838: yet the petitioner slumbered on his alleged rights, this claim for the property not having been set up till April, 1840. These and other facts in the record exhibit *Bookout*, as against third persons, in the attitude of a mere creditor for the price of property of which he had made delivery to the purchaser, in a State where it is proved that slaves are chattels, to which title may be made even by verbal contract and delivery. The vendor must be considered as having waived the

condition precedent, if it existed, and trusted to the personal security of the vendee. The secret equities between him and *Anderson* cannot, under the circumstances of the case, be invoked against third persons.

It is therefore decreed that the judgment of the court below be reversed, and that there be judgment in favor of the defendant *Shelton*, with costs in both courts.